UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEMETRIUS MUSCHETTA, *et al.*,<br><br>Defendants. | Criminal Case No. 15-0076 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Defendants Andre Arrington, Kyree Mitchell and Myron Williams have been indicted, along with eleven co-defendants, with conspiring to distribute and possess with intent to distribute varying amounts of heroin and cocaine, in violation of 21 U.S.C. § 846. *See* Indictment, Count One, ECF No. 1.[1] Following detention hearings before Magistrate Judges, each of these defendants was ordered to be held pending trial, pursuant to 18 U.S.C. § 3142. *See* Detention Mem. as to Kyree Mitchell ("Mitchell Detention Mem."), July 13, 2015, ECF No. 38; Detention Mem. as to Andre Arrington ("Arrington Detention Mem."), July 13, 2015, ECF No. 36; Detention Mem. as to Myron Williams ("Williams Detention Mem."), August 3, 2015, ECF No. 58. Pending before the Court are motions by these three defendants to appeal their detention orders, under 18 U.S.C. § 3145(b), *see* Mot. for Reconsideration of Detention of Def. Andre Arrington ("Arrington Mot."), ECF No. 41; Def. Kyree Mitchell's Mot. to Reconsider Detention

---

[1] Defendant Williams has also been indicted and detained in a related case, in which he is charged with conspiring with three co-defendants to distribute and possess with intent to distribute five or more kilograms of cocaine. *United States v. Johnson*, No. 15-cr-0077 (BAH) (D.D.C.) ("Case No. 15-cr-77"), Indictment, Count One, ECF No. 1; *id.*, Minute Entry, June 29, 2015. He has filed an appeal of the Magistrate Judge's detention order in the related case as well, *id.*, Def. Myron Williams Appeal of Magistrate's Detention Order, ECF No. 20, which is opposed by the government, *id.*, Gov't Opp'n to Appeal from the Magistrate's Detention Order Filed by Def. Myron Williams, ECF No. 26. For the same reasons set forth in this Memorandum Opinion, Williams' motion in Case No. 15-cr-77, ECF No. 20, is DENIED.

1

Order ("Mitchell Mot."), ECF No. 46; Def. Myron Williams Appeal of Magistrate's Detention Order ("Williams Mot."), ECF No. 47, which motions are opposed by the government, *see* Gov't Omnibus Opp'n to Appeal from the Magistrate's Detention Order & Mots. to Reconsider Detention Orders Filed by Defs. Myron Williams, Andre Arrington, & Kyree Mitchell ("Gov't Opp'n"), ECF No. 55.  Upon consideration of the information set out in these motions, supporting memoranda of law, and presented at the motions hearing on August 4, 2015, for the reasons stated in open court and outlined below, the defendants' motions for pretrial release are denied.

This Memorandum Opinion sets forth the "written findings of fact and a written statement of the reasons for the detention."  18 U.S.C. § 3142(i)(1); *cf. United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988) (per curiam) (finding "the transcription of a detention hearing, if it evinces a clear and legally sufficient basis for the court's determination, will satisfy the requirements of section 3142(i)" notwithstanding "the mandatory nature of section 3142(i)"); *United States v. Nwokoro*, 651 F.3d 108, 111 (D.C. Cir. 2011) (per curiam) (remanding detention order upon finding that transcript of detention hearing "failed . . . to adequately memorialize [the district court's] determination").

I.    BACKGROUND

The charges in this case arise from an approximately six-month investigation into illegal narcotics trafficking in the Barnaby Terrace neighborhood in Southeast, Washington, D.C.  Over the course of the investigation, law enforcement officers employed multiple investigative techniques, including court-authorized wiretaps from February 10, 2015 through May 29, 2015, "pen registers, pole cameras, physical surveillance, stops, seizures, and search warrants."  Gov't Opp'n at 4.  As detailed below, each defendant, who is now seeking review of a Magistrate

Judge's detention order and requesting pretrial release, was intercepted during the wiretap phase of the investigation, as well as surveilled allegedly participating in activities facilitating the charged narcotics distribution and possession with intent to distribute conspiracy. In addition, execution of search warrants at the residences of defendants Andre Arrington and Kyree Mitchell uncovered evidence of firearms possession, illegal narcotics and narcotics trafficking paraphernalia. Overall, the government proffered at the motions hearing that this investigation has resulted in the seizure of over four kilograms of heroin, as well as powder cocaine, crack cocaine and multiple firearms. *See* Rough Transcript of Detention Hearing (Aug. 4, 2015) ("Detention Hearing Trans.") at 54:9–12.

On June 18, 2015, the Grand Jury returned the Indictment in this case charging fourteen defendants, including Messrs. Arrington, Mitchell, and Williams, in Count One with Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of Heroin, and Cocaine, in violation of 21 U.S.C. § 846. Indictment at 1–6. The Indictment also charges Mr. Williams in Count Twelve with Conspiracy Involving a Firearm and Drug Trafficking Crime, in violation of 18 U.S.C. § 924(o). *Id*. at 11. Thereafter, starting on June 25, 2015, the government executed arrest and search warrants, resulting in searches of the residences of Messrs. Arrington, Mitchell and Williams and other co-defendants. *See* Arrest Warrants, ECF Nos. 4, 6, 14.

At the detention hearing for Mr. Williams, on June 29, 2015, United States Magistrate Judge Deborah A. Robinson granted the government's detention request, concluding by clear and convincing evidence that this defendant failed to rebut the presumption that no condition or combination of conditions could be imposed to reasonably assure the safety of the community.[2]

---

[2] In the detention hearing held in Mr. Williams' other case, he waived his right to a hearing and written findings of fact, and consented to detention. Case No. 15-cr-77, Minute Entry, June 29, 2015; Williams Detention Mem. at 1 n.1.

Williams Detention Mem. at 4. The next day, June 30, 2015, at detention hearings for Messrs. Arrington and Mitchell, United States Magistrate Judge Alan Kay likewise granted the government's detention request, concluding by clear and convincing evidence that these defendants failed to rebut the presumption that no condition or combination of conditions could be imposed to reasonably assure the safety of the community, and held them without bail. Arrington Detention Mem. at 9; Mitchell Detention Mem. at 7. A hearing on the motions of these three defendants for reconsideration of the Magistrate Judges' detention orders and for pretrial release was held on August 4, 2015. These motions are now ripe for resolution.

## II.  LEGAL STANDARD

"A motion under 18 U.S.C. § 3145(b) for review of a magistrate judge's detention order requires the Court promptly to examine *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community." *United States v. Sheffield*, 799 F. Supp. 2d 18, 19–20 (D.D.C. 2011); *see* 18 U.S.C. § 3145(b). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Id.* at 20 (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33 (D.D.C. 2005); *United States v. Karni*, 298 F. Supp. 2d 129, 130 (D.D.C. 2004) (*citing United States v. Hudspeth*, 143 F. Supp. 2d 32, 35–36 (D.D.C. 2001)).

The Bail Reform Act of 1984 provides a "regulatory device . . . to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee." *United States v. Montalvo-Murillo*, 495 U.S. 711, 719–720 (1990). Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, a judicial officer "shall order" a defendant's detention before trial if, after a hearing, "the judicial officer finds that no condition

or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e). The judicial officer considering the propriety of pretrial detention must consider four factors:

> (1) [t]he nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance;
> (2) the weight of evidence against the person;
> (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g).

The government is required to demonstrate the appropriateness of pretrial detention by clear and convincing evidence. *See id.* § 3142(f). When, however, "there is probable cause to believe that the [defendant] committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)," a rebuttable presumption is triggered "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." *Id.* § 3142(e)(3). This rebuttable presumption applies here since all three defendants are charged in Count One of the Indictment with conspiring to distribute and possess with intent to distribute varying amounts of heroin and cocaine, in violation of the Controlled Substances Act, a felony that is punishable by more than ten years of imprisonment. *See* 21 U.S.C. §§ 841(b)(1), 846. The D.C. Circuit has made clear that the Court "may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e)." *United States v. Williams*, 903 F.2d 844, 844 (D.C. Cir. 1990) (per curiam) (unpublished); *see also United States v. Smith*, 79 F.3d 1208, 1210

5

(D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community.").

Notwithstanding the grand jury's finding of probable cause, the Court must evaluate the weight of the evidence against each defendant seeking reconsideration of the detention orders and pretrial release to determine whether pretrial detention is proper. 18 U.S.C. § 3142(g)(2). The Court now turns to the consideration of the weight of the evidence and the other three statutory factors as applied to each defendant.

## III.   DISCUSSION

Based on the government's proffer, the Court is satisfied that the detention orders were correctly entered against defendants Andre Arrington, Kyree Mitchell and Myron Williams.

### A.   Andre Arrington

The Magistrate Judge ordered the pretrial detention of defendant Andre Arrington "on the basis of dangerousness to the community." Arrington Detention Mem. at 1. This defendant has not rebutted the presumption that no set of conditions will reasonably assure the safety of other persons and the community and, consequently, the detention order will not be disturbed.

First, the nature and circumstances of the offense favor continued detention since the Indictment demonstrates probable cause to believe that Mr. Arrington participated in a large-scale conspiracy to distribute substantial quantities of heroin and cocaine that involved the use of firearms. While the amount of narcotics attributable to Mr. Arrington is only "a detectible amount of heroin," this charge "includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One." Indictment at 4. As such, the penalty that he faces on this charge, due to his prior narcotics conviction, is a maximum of thirty years' incarceration. 21 U.S.C. §§ 841(b)(1)(C), 846. Moreover, the government has indicated that the

6

grand jury may be requested to return a superseding indictment that would add a firearm charge against this defendant, under 18 U.S.C. § 924(c), resulting in an enhanced penalty of a five year consecutive mandatory minimum period of incarceration, based upon the recovery from his bedroom closet during the search executed on June 25, 2015, of a .40 caliber Glock semi-automatic handgun with a round in the chamber and a loaded extended magazine with a capacity of 29 rounds. Gov't Opp'n at 6, 31; Detention Hearing Trans. at 29:16–30:10. Based upon the evidence collected during the investigation, the government proffers that Mr. Arrington, along with his brother, co-defendant Tijuan Arrington, used his grandmother's house on Barnaby Terrace to facilitate the distribution of heroin that they obtained from co-defendants Myron Williams and Demetrius Muschetta. Gov't Opp'n at 27.

Second, although Mr. Arrington discounts the number and import of his intercepted communications with co-defendant Muschetta, Mem. in Supp. for Mot. for Reconsideration of Detention of Def. Andre Arrington ("Arrington Mem.") at 4, ECF No. 41-1, the weight of the evidence against him is substantial. Intercepted communications on April 6, 2015 indicate that portions of three kilograms of heroin seized from co-defendant Kevin Morris that day were intended for delivery to Mr. Arrington, via his brother. Gov't Opp'n at 19–21. Additionally, on May 6, 2015, after making arrangements with Mr. Muschetta, Mr. Arrington was surveilled bringing a bag into Mr. Muschetta's residence. Mr. Muschetta was subsequently stopped after traveling to Baltimore to meet his heroin supplier and found in possession of three kilograms of heroin. *Id.* at 29–30. Based on the interceptions and surveillance, the government believes that Mr. Arrington delivered purchase money to Mr. Muschetta and that at least a portion of the seized heroin that day was "meant for delivery" to Mr. Arrington and other co-defendants. *Id.* at 30. Mr. Arrington's involvement in the charged heroin conspiracy is corroborated by evidence

seized from his bedroom pursuant to a search warrant on June 25, 2015, including approximately $19,435 in U.S. currency, four blocks of Mannite Canoscenti, which is the same brand of heroin cutting agent found in the possession of Mr. Muschetta when he was arrested on May 6, 2015, and other drug packaging paraphernalia, such as baggies, strainers with suspected narcotics residue, and multiple scales.  *Id.* at 6–7.  Furthermore, shortly before the execution of the search warrant at Mr. Arrington's residence, this defendant arrived home and, upon noticing a law enforcement vehicle, drove at a high rate of speed to the house, entered the house and did not promptly respond to law enforcement announcements while inside the house.  *Id.* at 8.  After his arrest, while he was in a holding room at the FBI's Washington Field Office with several co-defendants, Mr. Arrington was recorded telling his co-defendants that "he had 'flushed' something prior to his arrest."  *Id.* at 9.

Third, Mr. Arrington's lengthy period of stable residence with his parents, girlfriend and small child shows close community ties that reduce his risk of flight, but his 2009 conviction for possession with intent to distribute marijuana reveals that this defendant has been involved in narcotics trafficking for a lengthy period of time.  This prior conviction arose from a traffic stop of a vehicle carrying both Mr. Arrington and his brother, co-defendant Tijuan Arrington, and resulted in the seizure of about $6,000 in cash and one pound of marijuana.  *Id.* at 30–31.  Mr. Arrington stresses that he received only a six-month suspended sentence and successfully completed his one-year of supervised release for his prior conviction, Arrington Mem. at 2, and that he has been gainfully employed in a cleaning business that he co-owns with a family member, *id.* at 4–5.  These are certainly salient considerations regarding Mr. Arrington's personal history and characteristics, but are undercut by the fact that his brother and Kevin Morris, whom Mr. Arrington has said is an employee of the cleaning business and has a prior

narcotics conviction, *see* Detention Hearing Trans. at 25:16–24, are also charged as co-defendants in this case. Mr. Arrington's history and characteristics indicate that, even after a prior narcotics conviction, he has likely not only returned to narcotics trafficking but become more seriously involved in narcotics trafficking of heroin and not just marijuana.

Finally, with regard to the nature and seriousness of the danger posed by Mr. Arrington's release to the community, several factors militate strongly in favor of detention. Mr. Arrington possessed a fully loaded gun in his bedroom where he also possessed approximately ten pounds of marijuana, cash and other drug paraphernalia. These tools of the illegal drug trade, combined with his alleged use of his grandmother's house on Barnaby Terrace to facilitate his narcotics trafficking activities, as well as the government's proffer that his other heroin suppliers remain unidentified, pose a significant risk to that community in particular.[3]

For these reasons, the Court concludes that Mr. Arrington has failed to rebut the presumption for detention that applies here. Accordingly, his motion for reversal of the Magistrate Judge's order of detention is denied and he shall remain in the custody of the Attorney General for confinement pending a final disposition in this case.

B.   **Kyree Mitchell**

The Magistrate Judge ordered the pretrial detention of defendant Kyree Mitchell "on the basis of dangerousness to the community." Mitchell Detention Mem. at 1. This defendant has not rebutted the presumption that no set of conditions will reasonably assure the safety of other persons and the community and, consequently, the detention order will not be disturbed.

---

[3] Mr. Arrington points out that his brother, Tijuan Arrington, has been released pretrial, despite the fact that the Indictment attributes to Tijuan Arrington a more significant amount of heroin. Arrington Mem. at 4. By contrast to Andre Arrington, however, the government indicated at the motions hearing that no loaded firearm, narcotics or drug paraphernalia were seized during execution of the search warrants on June 25, 2015 that could be indisputably tied to Tijuan Arrington. *See* Detention Hearing Trans. at 21:8–25.

First, similarly to Mr. Arrington, the nature and circumstances of the offense favor continued detention since the Indictment demonstrates probable cause to believe that Mr. Mitchell participated in a large-scale conspiracy to distribute substantial quantities of heroin and cocaine that involved the use of firearms. While the amount of narcotics attributable to Mr. Mitchell is only "a detectible amount of" heroin and cocaine, this charge "includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One." Indictment at 5. As such, the penalty that he faces on this charge is a maximum of twenty years' incarceration. 21 U.S.C. §§ 841(b)(1)(C), 846. Moreover, the government has indicated that the grand jury may be requested to return a superseding indictment that would add a firearm charge against this defendant, under 18 U.S.C. § 924(c), resulting in an enhanced penalty of a five year consecutive mandatory minimum period of incarceration, based upon the recovery from Mr. Mitchell's bedroom during the search executed on June 25, 2015, of a Colt .38 caliber revolver loaded with 5 rounds of ammunition. Gov't Opp'n at 7; Detention Hearing Trans. at 42:6–11. Based upon the evidence collected during the investigation, the government proffers that Mr. Mitchell "was a redistributor of narcotics supplied by" co-defendant Myron Williams, including selling narcotics to customers sent to him by Mr. Williams, and also "served as a 'lookout' for WILLIAMS on Barnaby Terrace, Southeast, informing WILLIAMS of the presence of police cars and officers in the neighborhood before WILLIAMS arrived in the area." Gov't Opp'n at 32.

Second, with regard to the weight of the evidence, Mr. Mitchell does not dispute that the search warrant executed on his home uncovered from his bedroom narcotics distribution paraphernalia, such as zip baggies, a scale, about six grams of heroin and a loaded revolver. Mitchell Mot. at 2–3; Gov't Opp'n at 7–8. He argues that the heroin found in his bedroom was

10

"an amount not inconsistent with personal use," Mitchell Mot. at 3, but that argument is belied by the amount of packaging material located with the heroin, which is fully consistent with activity of a narcotics trafficker, *see* Detention Hearing Trans. at 40:18–41:3.  He also disputes the import of the loaded revolver, citing the absence of evidence that the gun "had ever been fired" or "was ever carried outside the home or otherwise brandished."  Mitchell Mot. at 3.  The proximity of the loaded firearm in the same room as the heroin and related paraphernalia for preparing narcotics for distribution, however, is significant evidence about the purpose and use of the firearm.

Moreover, the firearm, heroin and drug paraphernalia seized from Mr. Mitchell's home strongly corroborate the government's proffer about the meaning of Mr. Mitchell's intercepted communications with co-defendant Myron Williams.  For example, on March 12, 2015, Mr. Williams instructed Mr. Mitchell to have two other individuals "have their money ready," when Mr. Williams met with them, but Mr. Mitchell alerted Mr. Williams about the presence of "the feds back there."  Gov't Opp'n at 32–33.  On other occasions, on March 13 and April 4, 2015, Mr. Williams contacted Mr. Mitchell about the presence of potential drug customers at a location in Barnaby Terrace.  *Id*. at 33–34.  On March 19, 2015, Mr. Mitchell contacted Mr. Williams about the weight of narcotics and was instructed by Mr. Williams to weigh the drugs so he "can know for yourself."  *Id*. at 34.

Third, regarding Mr. Mitchell's personal history and characteristics, he is an unemployed 19-year old with no criminal history and lives with family members in the Highpoint neighborhood on Barnaby Terrace.  While these factors tend to show that Mr. Mitchell poses a low flight risk, they also indicate that he engaged in the alleged drug dealing corroborated by the search warrant and intercepted communications in his own neighborhood.  As the Magistrate

Judge found, Mr. Mitchell's "access to other heroin and cocaine suppliers who remain active, raises concern that Defendant may fall back into the same criminal activity if he is released." Mitchell Detention Mem. at 6.

Finally, with regard to the final factor of the nature and seriousness of the danger posed by the person's release to the community, the evidence that Mr. Mitchell engaged in narcotics trafficking in his own neighborhood, combined with the loaded revolver recovered from his bedroom, presents a plain risk to his community.

For these reasons, the Court concludes that Mr. Mitchell has failed to rebut the presumption for detention that applies here. Accordingly, his motion for reversal of the Magistrate Judge's order of detention is denied and he shall remain in the custody of the Attorney General for confinement pending a final disposition in this case.

### C.   Myron Williams

The Magistrate Judge ordered the pretrial detention of defendant Myron Williams based on the finding "by clear and convincing evidence that no condition of release or combination of conditions would reasonably assure the safety of the community." Williams Detention Mem. at 4. This Court agrees with this finding and, consequently, the detention order will not be disturbed.

First, similarly to Messrs. Arrington and Mitchell, the nature and circumstances of the offense favor continued detention since the Indictment demonstrates probable cause to believe that Mr. Williams participated in a large-scale conspiracy to distribute substantial quantities of heroin and cocaine that involved the use of firearms. Indeed, the amount of narcotics attributable to Mr. Williams in Count One of the Indictment is one kilogram or more of heroin and five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i)–(ii). *See*

Indictment at 3.  In addition, Mr. Williams is charged in Count Twelve of the Indictment with conspiring on December 10, 2014 to possess firearms, in violation of 18 U.S.C. § 924(o).  Indictment at 11.  Due to Mr. Williams' prior felony narcotics conviction, he is facing a substantial mandatory minimum penalty of at least twenty years and up to life imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A)(i)–(ii); Gov't Opp'n at 25.  According to the government's proffer, Mr. Williams worked closely with Mr. Muschetta to obtain kilogram quantities of cocaine from co-defendant William Winter and to obtain heroin from various sources, both of which types of narcotics Mr. Williams distributed to co-defendants for re-sale and other redistributors, as well as to drug users.  Gov't Opp'n at 13.

Second, the weight of the evidence against Mr. Williams is substantial.  A court-authorized wiretap on Mr. Williams' telephone from February 10, 2015 through April 9, 2015, revealed conversations with Mr. Muschetta and their supplier, co-defendant William Winter, arranging for purchases of significant amounts of cocaine and the price at which the drugs would be bought.  Gov't Opp'n at 14–18 (describing and summarizing intercepted calls on March 14, April 30 and May 1, 2015).  The import of these calls was corroborated by a seizure of over one kilogram of cocaine on May 6, 2015 from Mr. Muschetta's house, along with three firearms and heroin.  *Id.* at 18–19.  Other intercepted calls revealed Mr. Muschetta's arrangements for the purchase of approximately four kilograms of heroin from a Baltimore supplier on April 6, 2015, and for subsequent delivery of a portion of that heroin to Mr. Williams, as well as co-defendants Andre and Tijuan Arrington.  *Id.* at 20–21.  When a portion of that heroin was seized by law enforcement upon the arrest of co-defendant Kevin Morris, Mr. Williams and Mr. Muschetta arranged to meet to discuss what had happened.  *Id.*  Additionally, Mr. Williams was surveilled making what appeared to be hand-to-hand sales of heroin on September 19, 2014 and of crack

cocaine on March 13 and April 3, 2015. *Id*. at 2, 22–24. When Mr. Williams' residence was searched on June 25, 2015, law enforcement uncovered an empty gun box and empty magazine and about $34,000 in cash. *Id.* at 6. Finally, among the intercepted calls are two in which the government proffers that Mr. Williams was trying to help co-defendant Chaka Al-Fatah obtain a .40 caliber firearm. *Id*. at 25.

Third, although Mr. Williams is a life-long resident of Washington, D.C. and has in the past been gainfully employed as bus driver, Williams Mot. at 2, other aspects of his personal characteristics and history strongly militate in favor of detention. In particular, Mr. Williams has four prior convictions, including a 1999 conviction for distribution of heroin, a 2002 conviction for possession of heroin a 2004 firearms conviction and, finally, a 2004 felony contempt conviction for violating a "stay-away order issued in another case . . . in which he was originally charged with distribution of heroin in a drug-free zone." Gov't Opp'n at 25, 25 n.8. This criminal history of narcotics and firearms convictions shows that the defendant has difficulty remaining out of the illegal narcotics business and that, even after serving time in prison for his prior convictions, has likely persisted in trafficking multiple types of illegal narcotics.

Finally, regarding the nature and seriousness of the danger posed by Mr. Williams to the community were he released, the government points out that the investigation revealed Mr. Williams has "numerous connections with various narcotics suppliers, some of whom remain unidentified and not charged in this indictment. If he were released from custody, Defendant WILLIAMS would therefore have a capacity to obtain new supplies of narcotics for resale." *Id.* at 26. Based upon the nature and extent of Mr. Williams' criminal history, and the evidence collected in investigation of the instant charges regarding this defendant's continued involved in

narcotics trafficking, the Court concurs with the finding of the Magistrate Judge that Mr. Williams' "release would pose a danger to the community." Williams Detention Mem. at 5.

For these reasons, the Court concludes that Mr. Williams has failed to rebut the presumption for detention that applies here. Accordingly, his motion for reversal of the Magistrate Judge's order of detention is denied and he shall remain in the custody of the Attorney General for confinement pending a final disposition in this case.

## IV.    CONCLUSION

For the reasons discussed above, the motions of the defendants Andre Arrington, Kyree Mitchell and Myron Williams for reconsideration of the Magistrate Judges' detention orders and for pretrial release are DENIED. Each of these defendants shall remain in the custody of the Attorney General for confinement pending a final disposition in this case.

An appropriate order accompanies this Memorandum Opinion.

Date: August 5, 2015

_____
BERYL A. HOWELL
United States District Judge